**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000233**
**04-APR-2018**
**08:02 AM**

NO. CAAP-17-0000233

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ROBERT A. BUKOSKI, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5DTA-16-00016)

AMENDED MEMORANDUM OPINION
(By: Fujise, Acting C.J., and Reifurth and Chan, JJ.)

Defendant-Appellant Robert A. Bukoski appeals from two
Judgment/Order and Notice of Entry of Judgment/Order documents,
entered by the District Court of the Fifth Circuit ("District
Court"),[1] on March 24, 2017. The District Court convicted
Bukoski of two counts (Counts 2 and 3)[2] of Inattention to

---

[1]     The Honorable Jonathan Chun presided.

[2]     The Second Amended Complaint provides:

> COUNT 2: On or about the 12th day of August, 2015, in
> the County of Kaua'i, State of Hawaii, [Bukoski] did
> **intentionally, knowingly, or recklessly** operate any vehicle
> without due care or in a manner to cause collision with, or
> injury to, to wit, Lawrence Asai, thereby committing the
> offense of Inattention to Driving, a petty misdemeanor, in
> violation of [HRS] Section 291-12.

> COUNT 3: On or about the 12th day of August, 2015, in
> the County of Kaua'i, State of Hawaii, [Bukoski], did
> (continued...)

Driving ("ITD"), in violation of Hawaii Revised Statutes ("HRS") section 291-12.[3]/

Bukoski argues that the District Court wrongly convicted him (1) based on (a) insufficient evidence that he possessed the requisite *mens rea* and (b) numerous clearly erroneous findings of fact; (2) after erroneously denying his motion for judgment of acquittal based on HRS section 701-109(1)(e); and (3) where, in its closing argument, Plaintiff-Appellee State of Hawaiʻi committed prosecutorial misconduct by (a) improperly shifting the burden of proof to him and (b) mis-characterizing the evidence.

I.    BACKGROUND

The factual background, according to the District Court's Findings of Fact, Conclusions of Law and Verdict Convicting Defendant of Inattention Offenses, entered on February 2, 2017, is as follows in relevant part:

> 1.    On Wednesday, August 12, 2015, around 10:39 a.m., [Caleb Jimenez], who was part of a street construction crew, working on Hardy Street, a public road, in front of Wilcox Elementary School, . . . observed [Bukoski] driving a . . . truck exceeding the 15 mph speed limit, during school hours.
>
> 2.    Jimenez saw [Bukoski] driving with his head down through the vehicle's windows.
>
> 3.    Jimenez witnessed [Bukoski] striking traffic barricades, victim Lawrence Asai (hereinafter "Asai"), and some construction equipment before coming to a stop.    On cross-examination, Jimenez testified that the all [sic] of these collisions took place within a few seconds.    Jimenez testified that there was a flagman before the construction

---

[2]/(...continued)
**intentionally, knowingly, or recklessly** operate any vehicle without due care or in a manner to cause collision with, or damage to, to wit, a traffic barrier, thereby committing the offense of Inattention to Driving, a petty misdemeanor, in violation of [HRS] Section 291-12.

(Emphasis in original.)

[3]/    HRS section 291-12 (Supp. 2014) provides:

Whoever operates any vehicle without due care or in a manner as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than thirty days, or both, and may be subject to a surcharge of up to $100 which shall be deposited into the trauma system special fund.

zone manned by Artworks Construction.

4. Jimenez testified that he received traffic safety training every Monday via weekly meetings, and that he was trained to make eye-contact with vehicles that passed through construction zones.

5. Jimenez saw Asai on the ground before medical personnel arrived and took Asai away.

6. Jimenez testified that, immediately to the side of the road where the accident occurred, there was a 1 to 2 foot deep trench containing rebar.

7. Jimenez testified that he and [Bukoski] grew up together and that they were like "family."

8. At the close of Jimenez's testimony, the State rested and [Bukoski] moved for a Judgment of Acquittal, which was denied by this Court, for reasons listed below.

9. Lieutenant Tanaka testified that he only brought a copy of General Order 2001-03, Motor Vehicle Traffic Investigation Procedures, which was later given to the State and Defense on November 3, 2016.

10. As a witness called by [Bukoski], Officer Hanson Hsu testified that he did not observe signs of impairment or intoxication in [Bukoski] at the scene. Officer Hsu further testified that, on his Motor Vehicle Accident Report for the incident, he did not mark the human factors of inattention, distraction, aggressive, reckless driving, excessive speed, driving too fast for conditions, or exceeding the speed limit as causes of or factors contributing to the accident, but he did mark "other improper action." During his investigation, he did not inspect the car for mechanical failure because he is not trained in mechanics. On cross, Hsu said that [Bukoski] told Hsu that [Bukoski] was the driver. [Bukoski] also told Hsu that he had a health problem and took medication.

11. As a witness for [Bukoski], Chelsea Carineo, who works near the collision scene and arrived on the scene approximately thirty minutes after it happened, testified that the traffic barriers were not weighed down, that [Bukoski's] vehicle had tinted windows, and that there were no flagmen posted earlier that day when she drove to work, although there were flagmen present at the site the following day. She also testified that the road was approximately 5-6 feet wide on the day of the accident and that there was a 1-2 foot deep trench immediately to the right of the road containing rebar. On cross, Carineo confirmed that the speed limit was 15[ ]mph and that school was in session during the time of the incident.

II. STANDARDS OF REVIEW

*Findings of Fact and Conclusions of Law*

A trial court's findings of fact are reviewed under the "clearly erroneous" standard of review. *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (citing *Hawai'i Thousand*

*Friends v. City and Cty. of Honolulu*, 75 Haw 237, 248, 858 P.2d 726, 732 (1993)). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Locquiao*, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (quoting *State v. Harada*, 98 Hawai'i 18, 22, 41 P.3d 174, 178 (2002)).

"An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong test. A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." *Dan*, 76 Hawai'i at 428, 879 P.2d at 533 (citing and quoting *Maria v. Freitas*, 73 Haw. 266, 270, 271, 832 P.2d 259, 262, 263 (1992)) (internal quotation marks omitted).

### *Sufficiency of the Evidence*

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

> *State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting *State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Richie*, 88 Hawai'i at 33, 960 P.2d at 1241 (internal quotation marks and citation omitted).

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

> *State v. Keawe*, 107 Hawai'i 1, 4, 108 P.3d 304, 307 (2005) (brackets omitted) (quoting *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)).

*State v. Bayly*, 118 Hawai'i 1, 6, 185 P.3d 186, 191 (2008).

Furthermore, "[m]atters related to the credibility of witnesses and the weight to be given to the evidence are generally left to the factfinder. The appellate court will neither reconcile conflicting evidence nor interfere with the decision of the trier of fact based on the witnesses' credibility or the weight of the evidence." *State v. Mitchell*, 94 Hawai'i 388, 15 P.3d 314 (App. 2000) (citing *State v. Gabrillo*, 10 Haw. App. 448, 457, 877 P.2d 891, 895 (1994)).

### Judgment of Acquittal

"When reviewing a motion for judgment of acquittal, [this court] employ[s] the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Jenkins*, 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000) (quoting *State v. Timoteo*, 87 Hawai'i 108, 112-13, 952 P.2d 865, 869-70 (1997)).

### Prosecutorial Misconduct

"Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Rogan*, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (quoting *State v. Balisbisana*, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996)) (internal quotation marks omitted).

III. DISCUSSION

A.   Findings of Fact ("FOFs")

We need not decide whether the FOFs that Bukoski challenges are clearly erroneous because the other evidence, taken in the light most favorable to the prosecution is

sufficient. State v. Tsujimura, 140 Hawaiʻi 299, 307, 400 P.3d 500, 508 (2017); *see, infra,* Part III.B.

B.    Sufficiency of the Evidence

Bukoski argues that there was insufficient evidence that he possessed the requisite *mens rea* to commit ITD. To support this point, Bukoski cites to *State v. Moleta*, 112 Hawaiʻi 233, 145 P.3d 776 (App. 2006), which concerns a conviction for Reckless Driving, in violation of HRS section 291-2,[4] but where the evidence was insufficient to support a conviction because the prosecution adduced no evidence of behavior or omissions by defendant that would manifest his own awareness of any risk. *Moleta* is distinguishable, however, on the basis that Bukoski's looking down and exceeding the speed limit are both behaviors which the State adduced evidence concerning.

Viewing the evidence in the light most favorable to the State, as we must, the evidence was sufficient to support the conviction. *See* Haw. Rev. Stat. §§ 291-12 and 702-206 (2014); *State v. Bayly*, 118 Hawaiʻi 1, 10, 185 P.3d 186, 195 (2008) (holding that to convict under HRS section 291-12, the prosecution has the burden of proving beyond a reasonable doubt that defendant "(1) operated a vehicle 'without due care or in a manner,' (conduct) (2) 'as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property' (result of conduct), HRS § 291-12, and that he did so (3) intentionally, knowingly, or recklessly[.]").

Testimony and exhibits adduced at trial show that the construction site was on the right side of Hardy Street. Traffic could proceed through the narrowed part of the road next to the site. Orange safety cones had been placed about two feet from the site, into the road. Construction barriers -- some white and at least one orange with reflective material on it -- were near the site. The cones and barriers were visible to oncoming traffic.

---

[4]    HRS section 291-2 provides, in part, "Whoever operates any vehicle . . . . recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle[.]" Haw. Rev. Stat. § 291-2 (2007).

Caleb Jimenez, a flagman trained to watch traffic in construction zones for safety concerns, was positioned in front of the library just before the site. According to Jimenez, when he first saw Bukoski on Hardy Street, Bukoski was driving "[f]aster than the speed limit of the construction site." According to the District Court's FOF 1, which is uncontested, Jimenez "observed [Bukoski] . . . exceeding the 15 mph" school-zone speed limit. Jimenez also testified that he saw Bukoski's vehicle collide with two barriers and some equipment, then drive partially onto a sidewalk and hit a fence. The second barrier struck a construction worker, Lawrence Asai. Just before Bukoski collided with the first barrier, Bukoski's head was tilted down at a 45-degree angle.

Based on the testimony that Bukoski exceeded the speed limit and/or drove with his head down in the construction zone, where there were warning devices visible to oncoming traffic, there was sufficient circumstantial evidence that Bukoski consciously disregarded a substantial and unjustifiable risk that he was operating his vehicle "without due care or in a manner" that would "cause a collision with, . . . or damage to" persons or property. *See State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987) (court, as trier of fact, "may draw all reasonable and legitimate inferences and deductions from the evidence adduced" (quoting *Lono v. State*, 63 Haw. 470, 473, 629 P.2d 630, 633 (1981))); *Mitchell*, 94 Hawai'i at 393, 15 P.3d at 319 ("The appellate court will neither reconcile conflicting evidence nor interfere with the decision of the trier of fact based on the witnesses' credibility or the weight of the evidence." (citing *Gabrillo, 10 Haw. App.* at 457, 877 P.2d at 895)); *State v. Rapozo*, 123 Hawai'i 329, 330 n.4, 235 P.3d 325, 334 n.4 (2010) (unchallenged FOFs are binding on the appellate court); Haw. Rev. Stat. §§ 291-12 and 702-206; *see also State v. Eastman*, 81 Hawai'i 131, 141, 913 P.2d 57, 67 (1996) (state of mind may be proven through circumstantial evidence) (citing *State v. Batson*, 73 Haw. 236, 254, 831 P.2d 924, 934 (1992)).

C.    Motion for Judgment of Acquittal

Bukoski argues that the District Court erroneously denied his motion for judgment of acquittal, based on HRS section 701-109(1)(e), because Counts 2 and 3 occurred through a continuous course of conduct and, thus, merged.  The State responds that it "does not oppose the merger of counts 2 and 3."

Despite the State's concession, "appellate courts have an independent duty 'first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'"  *State v. Veikoso*, 102 Hawai'i 219, 221-22, 74 P.3d 575, 577-78 (2003) (quoting *State v. Hoang*, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000)).  In other words, the State's concession "is not binding upon an appellate court[.]"  *Hoang*, 93 Hawai'i at 336, 3 P.3d at 502 (internal quotation marks omitted) (quoting *Territory v. Kogami*, 37 Haw. 174, 175 (Haw. Terr. 1945)).

We agree that the District Court erred in convicting Bukoski on more than one count of ITD where the evidence shows the offenses occurred through a continuing course of conduct. *State v. Decoite*, 132 Hawai'i 436, 438-39, 323 P.3d 80, 82-83 (2014) (noting the Supreme Court's definition of a continuous offense); *see also* Haw. Rev. Stat. §§ 291-12 and 701-109(1)(e) (2014); *State v. Arceo*, 84 Hawai'i 1, 21, 928 P.2d 843, 863 (1996) (holding that the prohibition against multiple convictions for uninterrupted, continuing course conduct does not apply where these actions constitute separate offenses under the law).  The evidence does not show that Bukoski possessed a distinct and separate intent with regard to each collision.  For instance, there is no evidence that Bukoski continued to exceed the speed limit or angle his head down after striking the first barrier. *See, e.g., State v. Rapoza*, 95 Hawai'i 321, 329, 22 P.3d 968, 976 (2001) (affirming defendant's conviction encompassing one offense where he pointed a firearm in the direction of three complaining witnesses and, over the course of a few seconds, discharged the weapon five to seven times).  Therefore, these counts should be merged.

D.    Prosecutorial Misconduct

In its closing argument, the State did not impermissibly shift the burden of proof to Bukoski, as Bukoski alleges.[5/]    Rather, the State maintained that Bukoski failed to rebut the evidence against him, which was not improper, *see State v. Napulou*, 85 Hawai‘i 49, 59, 936 P.2d 1297, 1307 (App. 1997) (A "prosecutor may make comments on . . . the failure of the defense to introduce material evidence[.]"), and did not amount to prosecutorial misconduct or denial of Bukoski's right to a fair trial.    *See State v. Tasani*, No. CAAP-11-0000131, 2012 WL 1071518, *1 (Haw. App. March 30, 2012) (In order to determine whether the alleged misconduct amounts to reversible error, "we consider 'the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant.'" (quoting *State v. Iuli*, 101 Hawai‘i 196, 208, 65 P.3d 143, 155 (2003))); *State v. McGriff*, 76 Hawai‘i 148, 158, 871 P.2d 782, 792 (1994) ("Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." (citing *State v. Pemberton*, 71 Haw. 466, 476, 796 P.2d 80, 85 (1990))); *State v. Agrabante*, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992) (setting out the standard for deciding whether alleged prosecutorial misconduct reached the level of reversible error); *State v. Hauge*, 103 Hawai‘i 38, 56-57, 79 P.3d 131, 149-50 (2003) (in closing argument, a prosecutor is permitted to draw reasonable inferences from the evidence and has wide latitude in discussing the evidence (quoting *State v. Clark*, 83 Hawai‘i 289, 304-05, 926 P.2d 194, 209-10 (1996))).

Bukoski argues that the State mis-characterized certain evidence in its closing argument.    Assuming for the sake of

---

[5/]    Bukoski contests the following argument:

There's been no testimony regarding something running in front of him.    There's been no testimony about the vehicle having some sort of mechanical problem.    There's been no testimony about any other kind of possibility out there that may make a car jerk off the road and run . . . over somebody.

argument that the first contested statement is inaccurate,[6] the error is harmless beyond a reasonable doubt because Bukoski argues that only one witness testified that his speed exceeded 15 miles per hour in the construction zone. That testimony alone, however, was sufficient to support the conviction. *See, supra,* Part III.B.

We agree that the second contested statement[7] contains an inaccuracy because at trial, Bukoski adduced Officer Hsu's testimony that he did not note in his police report that Bukoski drove too fast or exceeded the speed limit. However, the misstatement was harmless because there was other evidence to support the District Court's finding that Bukoski exceeded the speed limit. Finally, any error with regard to the third alleged mis-characterization[8] was also harmless beyond a reasonable doubt because Bukoski's collision with a barrier was sufficient to support the conviction.

IV. CONCLUSION

For the reasons explained above, Counts 2 and 3 of Inattention to Driving in the Second Amended Complaint are deemed to have merged under HRS section 701-109(1)(e). Therefore, both

---

[6] As part of his closing argument, the prosecutor stated:

> A law-abiding citizen doesn't drive <u>through a construction zone</u>, in [Jimenez's] testimony, <u>at the higher rate of speed than 15 miles per hour, which we've established through two witnesses now</u>, and it's during school hours, which is established by two witnesses, so more reason to be careful, as well as near a construction zone.

(Contested portions emphasized.) Bukoski argues that only one witness testified that his speed exceeded 15 miles per hour.

[7] The prosecutor also stated:

> [T]he testimony was that [Bukoski] was going above the speed limit . . . . There's no defense that none of that occurred.

[8] The third alleged mis-characterization is as follows:

> Quite simply, [Jimenez] testified that he drove his vehicle with his head facing down, and he drove through three barriers, he drove through some equipment, <u>he hit somebody</u> along the way, and he did all of those things not in a way that a law-abiding citizen would do it.

(Contested portion emphasized.)

Judgment/Order and Notice of Entry of Judgment/Order documents, entered by the District Court of the Fifth Circuit on March 24, 2017, are vacated and the case is remanded for proceedings consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, April 4, 2018.

On the briefs:

Matthew Mannisto
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

Acting Chief Judge

Associate Judge

Associate Judge